

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

April 13, 1948

Hon. C. E. Belk, Administrator
Board of Plumbing Examiners
306 West 15th Street
Austin, Texas

Opinion No. V-541

Re: Applicability of the
Plumbing License Law
of 1947 to butane or
propane dealers who
install piping used
exclusively for lique-
fied petroleum gas
purposes.

Dear Sir:

Reference is made to your request for an opin-
ion on the above captioned subject, and we quote from
your letter, in part, as follows:

"1. Are butane or propane dealers
who install piping which is used exclu-
sively for butane and propane purposes,
regardless of whether the house so piped
is inside or outside of cities of five
thousand or more population, subject to
the provisions of S. B. 188? (The Plumb-
ing License Law of 1947)

"2. Are butane and propane dealers
who install appliances for use on butane
and propane subject to the provisions of
S. B. 188 when such installation requires
that said dealers or their employees find
it necessary to run additional gas and
water lines in order to make such appli-
ances function properly?

"3. If your interpretation excludes
butane and propane dealers in Texas from
the provisions of this Act, would such ex-
cluded dealers be subject to any local or-
dinances which cities in Texas may pass in

an attempt to bring such butane and propane dealers under the provisions of their local plumbing ordinances, or would the provisions of S. B. 188 prevail over such local ordinances?"

As you have noted in your request, the Railroad Commission is given a general regulation and licensing authority over liquefied petroleum gas dealers and operators who install liquefied petroleum gas storage and dispensing systems and piping. The authority of the Railroad Commission to license such activities is contained in Acts 1945, 49th Leg., S. B. 269, ch. 358, page 629, codified in Vernon's Civil Statutes as Article 6053 from which we quote the pertinent excerpts:

"Sec. 7. (1) No person, firm or corporation shall engage in this state in the manufacturing, and/or assembling, and/or repairing, and/or selling, and/or installing of containers to be used with liquefied petroleum gases as a fuel, nor shall such person, firm, or corporation engage in the sale, transportation, dispensing or storage of liquefied petroleum gases within this state, except where stored by the ultimate consumer for consumption only, without having first obtained from the Railroad Commission of Texas under the provisions of this Act a license so to do. Applications for such licenses shall be in writing and shall contain such information as the Commission shall prescribe. No such license shall be issued until a hearing is had thereon and the Commission has determined that the applicant has made good and sufficient proof that he can and will meet all safety requirements provided in this Act and by the rules and regulations of the Railroad Commission, and the Commission finds that such applicant is qualified and the evidence adduced justifies issuance of such license. The Railroad Commission shall have the authority to promulgate rules and regulations for the safety and protection of the public."

"Sec. 8. Provided further, that the Commission shall have the authority to

require every person, firm or corporation who makes installations or repairs of containers, equipment, and/or appliances, or firms, persons or corporations using installation men, service men, and repair men, to have at least one person in their regular employ or organization who shall prove through an examination given by the Railroad Commission that he has a thorough knowledge and understanding of the containers, appliances and equipment they intend to install; and providing further that he is competent and qualified to properly install, service and/or repair such containers, appliances and equipment; such examination to be based upon recognized standard codes and practices as promulgated by the Railroad Commission. Persons, firms, corporations or associations who handle appliances exclusively for use with natural gas, and who do not offer their appliances for sale or use with liquefied petroleum gases, are exempted from the provisions of this Act."

Additional provisions of Art. 6053 require a surety bond in favor of the State of Texas, and policies of insurance to protect those who may be injured by any act of negligence on the part of liquefied petroleum gas dealers. It also contains sections providing for procedures for hearings in connection with complaints against licenses. Provision for payment of a fee for the license required by Section 7 of the Act is also made.

The Plumbing License Law of 1947, to which you refer, is codified as Article 6243-101, V. C. S. It requires a license of plumbers and in Section 2 defines plumbing as follows:

"Sec. 2 (a) The word or term 'plumbing' as used in this Act means and shall include: (1) All piping, fixtures, appurtenances and appliances for a supply of water or gas, or both, for all personal or domestic purposes in and about buildings where a person or persons live, work or assemble; all piping, fix-

tures, appurtenances and appliances out-
side a building connecting the building
with the source of water or gas supply,
or both, on the premises, or the main in
the street, alley or at the curb; all pip-
ing, fixtures, appurtenances, appliances,
drain or waste pipes carrying waste water
or sewage from or within a building to the
sewer service lateral at the curb or in
the street or alley or other disposal ter-
minal holding private or domestic sewage;
(2) the installation, repair and mainte-
nance of all piping, fixtures, appurte-
nances and appliances in and about build-
ings where a person or persons live, work
or assemble, for a supply of gas, water,
or both, or disposal of waste water or
sewage.

We will first consider the question of wheth-
er those engaged solely in the liquefied petroleum gas
business within the terms of Article 6053 are also sub-
ject to the requirements of the Plumbing License Law of
1947.

By Article 6053, the Legislature has set up
elaborate regulatory provisions applicable to the lique-
fied petroleum industry including the delegation of
authority to the Railroad Commission "to promulgate
rules and regulations for the safety and protection of
the public." It further authorized the Commission to
require all who make, or employ others to make, install-
ations or repairs of containers, equipment and/or appli-
ances, to have at least one person in their employ or
organization who shall prove through examination that he
has all of the knowledge, competency and qualifications
necessary to do the work, the examination to be based
upon recognized standard codes and practices as promul-
gated by the Commission.

Such requirements, and those the Commission is
authorized to make thereunder, are designed to accom-
plish the identical ends insofar as the installation,
etc. of liquefied petroleum gas facilities as the Plumb-
ers License Law is designed to accomplish as to plumb-
ing installation generally, including gas fixture in-
stallation. The Liquefied Petroleum Gases Law goes fur-
ther than to provide measures to assure competency, and
authorizes the regulation of manufacture and installa-

tion of all equipment designed for the utilization of liquefied petroleum gases.

Are we, therefore, to construe the Plumber's License Law as a modification of the Liquefied Petroleum Gases Law in requiring an additional or duplicate examination into the competency of those engaged solely in the business contemplated by Article 6053, and incidentally require them to qualify to engage in plumbing activities having no relation whatever to the installation, repair and servicing of liquefied petroleum gas facilities?  Such an interpretation can arise based solely on a strictly literal interpretation of its language.

It is true that one holding a general license having as its purpose the accomplishment of legislative ends different from those of a more specific license to do things included in the general license may be required to obtain the specific license.  It may also be true that one holding such a specific license may be required to obtain the general license.  But when the specific license requirement is designed to accomplish all of the ends of the general license requirement and more too, then we believe that the intent of the Legislature is fulfilled by meeting the requirements of the specific license by one engaged solely in the endeavor or occupation contemplated by the latter.

This principle has been recognized in the construction of tax and license statutes and ordinances in situations believed to be analogous to the present considerations.  In the case of Texas Company v. Stephens, 103 S.W. 481, by the Supreme Court of Texas, the court said:

"The same person or corporation may carry on several different businesses, and, of course, may be taxed in respect of each, but, when the Legislature has defined and taxed one business, it is not to be assumed that it has intended to again tax the same business under another name, nor is it to be assumed that it has intended to tax, as a distinct business, that which is a mere incident of another business which has been defined and taxed as a whole."

We are of the opinion that those who do no

plumbing work other than that done incidentally to the business regulated by Article 6053 are not subject to the Plumbers License Law.

The Plumbing License Law contains provisions which we believe support the construction which we have placed thereon in the light of the Liquefied Petroleum Gases Law and other enactments.

Section 15 of such law provides:

"Every city in this State of more than five thousand (5,000) inhabitants shall, and any city or town of this State may, by ordinance or by law, prescribe rules and regulations for the materials, construction, alteration and inspection of all pipes, faucets, tanks, valves, and other fixtures by and through which a supply of water, gas or sewage is used or carried; and provided that they shall not be placed in any building therein except in accordance with such rules and regulations."

The above Section is in direct conflict with Sections 3 to 6 of Article 6053 authorizing the Railroad Commission to prescribe rules and regulations covering the same subject matter insofar as the utilization of liquefied petroleum gases is concerned. An attempt to blend these enactments into a system of concurrent and simultaneous jurisdiction over the liquefied petroleum industry is obviously impractical. No such result could, in reason, have been contemplated by the Legislature.

Repeals by implication are not favored. Here a specific law deals with licensing liquefied petroleum gas handlers and a later general law is silent on this particular type of workman. Both laws must be harmonized and upheld if possible. The later law will not be held to impliedly repeal the former. Liquefied petroleum gases, being highly explosive, require special handling and the Legislature has made special provision for its handling through the Railroad Commission, and not by regulation through the State Board of Plumbing Examiners.

Your first two question are, therefore, answered in the negative.

As to your third question, having concluded that liquefied petroleum gas enterprises are not subject to the Plumbing License Law, we believe that the extent to which municipalities might regulate them is not affected by any of the provisions thereof. We cannot state categorically that local city plumbing ordinances would not apply to them in any particular. However, since the Legislature has seen fit to place them under the regulation and supervision of the Railroad Commission, to that extent Railroad Commission regulation would be exclusive. The general rule is stated in 43 C. J. 422, "Municipal Corporations", Section 553:

"The power to regulate public utilities may be and oftentimes is, delegated by the State to boards or commissions. Then the question arises whether the power of such body is exclusive or concurrent with that of the municipal corporation. If the power conferred on the board or commission may be exercised without being interfered with by the regulation of the municipal corporation, the power may be exercised concurrently to the extent that the municipal regulation does not conflict with the exercise of the power conferred upon the state board or commission. Following the general rule, municipal regulations dealing with public utilities cannot conflict with statutory enactments on the subject. Ordinarily power conferred on public service boards or commissions over public utilities excludes the corporation from acting in the premises."

This rule would also apply where activities, other than those of "public utilities", are under statutory authority, regulated by a State board or commission.

## SUMMARY

Liquefied petroleum gas enterprises regulated under Article 6053, V. C. S., are not subject to the provisions of Article 6243-101, V. C. S., the Plumbing License Law of 1947. Municipalities may not regulate such liquefied petroleum gas con-

cerns in a manner inconsistent with Article 6053, V. C. S., and the regulations thereof by the Railroad Commission.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By Ned McDaniel
Assistant

By James T. Bryan
Assistant

APPROVED:

Price Daniel
ATTORNEY GENERAL

NMc:JTB:mw